Good morning, your honors. Melanie Yang for the petitioner, Ms. Zeng. In this case, I believe the Ninth Circuit Court has jurisdiction over the issue of one-year rule because in this case there's issues about violation of her constitutional rights. Since the petitioner presented convincing evidence before the immigration judge that she came to the United States on January 26, 2002. She filed her application on October 2002. She filed her application within a year. And I presented several arguments and evidence before the Board of Immigration Appeals, but the Board of Immigration Appeals affirmed without opinion. Counsel, what's in the record that she arrived here in January of 2002? She has a boarding pass. Which is not in her name. Yes, correct. But she has an invoice from a hotel in Shanghai, which is January 25, 2002. Now, can you clarify that for me? Because the page that I'm looking at, I'm looking at a translation of it. And I think the translation, which is found on page 172 in the record, says November 25, 2002. Which isn't possible because she was served with a notice to appear on January 18, so she was already in the United States. So I'm a little confused as to how we get the date. I'm looking for something that says it's in English, and it says invoice of Shanghai Zhejiang Hotel, investment management company. Administrative record looks like page 172. Your Honor, actually 172. Is there some confusion in the language as to between November and January? Because I didn't think this point was disputed, but as I looked through the record, I couldn't figure out why the translation of the invoice says November. Actually, the Chinese is, you know, you can tell if you look at administrative record 171, you can tell the date. It's 2002, January 25, because it's in, you know, in the Arabic numbers. We can read it even without translation. That is a translation error. Okay. Well, I didn't think it was disputed, but it was odd. Well, counsel, do we have any jurisdiction over this ruling on the timeliness of the asylum claim? No. But there's exception to that. Ninth Circuit 2004, Chen v. Ashcroft says, you know, if this rule applies to each specific case and if the court, like, made a clear mistake, then there's exception to the general rule. Well, if it makes a what kind of a mistake? I mean, what we have here is essentially a ruling of fact by the immigration judge, which deals with timeliness. The immigration judge does it on credibility, but it seems to me that may not be an issue of law that we can review. The immigration judge neglected the evidence on the record about the one-year issue. The credibility issue is regarding the testimony regarding, you know, whether she suffered a past decision in China. And I believe evidence on record about when she arrived in United States is pretty clear. She has boarding pass, she has hotel invoice in China, and also she has a refused visa from U.S. consulate in Guangzhou, indicated at least in September 2001 she's still in China. And because the judge made a career error and the BIA didn't confirm with that opinion, I believe like the petitioner did not have a chance to review the judge's, you know, career error. So on that point, I think 2004 can be Ashcroft exception about violation of petitioner's due process rights should be applied so the court has a jurisdiction to review whether she, this case, can fall into the exception. I'm a little puzzled as well about that. I mean, your point about the substantial evidence is clear. But if you look at the BIA opinion here, the ground cited by the BIA was that the respondent's asylum application had not been filed within one year of her last arrival in the United States. Do you challenge that? Yes, that's one point I challenge the decision. Okay, and where in the record is there evidence that indicates that that is simply wrong as a matter of fact and that was challenged before the IJ? Before the IJ, the petitioner testified that she came to the United States on January 26th and the administrative record 171 presents the evidence and 178 presents evidence like she's still in China at the beginning of 2002. So if she filed October, then that means she must have filed within a year. Even if we didn't, even if we had reason to believe that the boarding pass wasn't actually hers, the hotel record is clearly in her name, not in somebody else's name. Correct. So if we believe the hotel record has verified her, then she is clearly in China in January of 2002 and she's in the United States in October of 2002. No, she filed in October 2002. That means within a year. But in the United States. So ten months later, nine months later, she is clearly in the United States when she files that application. Yes, that means she filed within a year of her arrival in the United States. Counsel, you have about three and a half minutes. Do you want to talk about the merits? Yes. And also, even if, you know, the one-year rule fails, she also has argument for withholding of removal since she suffered a past persecution and she has a presumption in the jury for withholding. And the judge's denial of withholding of removal is based on adverse credibility finding. But I believe the judge's adverse credibility finding was not containable since, you know, some of the judge's inconsistent allegation is minor and some of the inconsistency allegation is just speculation, such as the judge doesn't believe her boarding pass, you know, she came on that date is speculation. And also, the judge believes that her medical records came from the same hospital, have two different stamps. There must be means the documents were fake, that was speculation, because it's possible from different departments of a hospital have different kind of stamps. And also, the judge had a bias toward the client, the judge. Counsel, one of the things that the judge pointed to was that she was in the hospital on two different dates. And on the first one, she says she has a miscarriage. And on the second date, roughly about a week later, she says that she has an abortion. But by abortion, is it your contention that she meant she had a D&C? D? Dilation and curentment. Oh, I see. I believe, like, on the first occasion is she suffered injury. She needed to go to hospital for checkups. And later on, you know, at the beginning, they tried to keep the, you know, keep the fetus. But after a week, they find out that is not a viable solution. So the second time she went there, just removed the fetus from her body. That's what happened to her. So she has two dates. Okay. So she didn't have a full miscarriage on the first visit to the hospital? Correct. Okay. So maybe the first one, maybe they still try to keep it. But later on find that it's impossible. I would like to reserve two minutes for rebuttal. Well, you're down to a minute and 13 seconds. Would you like to reserve that? Okay. So I reserve for that. Let's hear from the government. Good morning. May it please the Court, let me hand you on behalf of the respondent. The agency properly denied the petitioner's asylum application for a failure to establish by clear and convincing evidence that she applied for asylum within one year of arrival in the United States. Okay. Counsel, how do we get there? All right. This is a very, very general finding by the IJA. I know that he's questioned her on the boarding pass. Is he questioning her on the hotel receipt as well? Because if the hotel receipt is accurate, she is in China in January of 2002. She clearly has applied for asylum in October of 2002. That's less than one year. That's just flat. The IJA is just flat wrong. How do you figure that one out? Your Honor, the petitioner, in support of her claim that she had applied within one year, submitted a boarding pass in the name of another individual. In reference to the hotel slip, it does indicate that someone using her name had stayed in Shanghai the night before she alleged she left China. However, this does not amount to clear and convincing evidence. But you flip-thought her. You discount her on the one hand because she says she used somebody else's name to come into the United States. When she presents evidence that she's used her own name someplace in China, you say, well, how do we know that that wasn't somebody else using your name? How does anybody ever get asylum in this kind of a racket? Your Honor, our position is that that evidence is not established clear and convincing evidence, and this Court is without jurisdiction to consider it. Well, I know that's the contention, but if I'm looking at the evidence, what does the IJA – that the hotel receipt in her own name in Shanghai is not evidence that she was in China on that date? Your Honor, our position is that it is not – the IJA determined that it's not clear and convincing evidence of her date of arrival and that this Court is without jurisdiction to review that determination. But is there any basis for the IJA rejecting that? I mean, do we have evidence that many people in China checking the hotel names under assumed names – I mean, this is – this would be quite a conspiracy on her part to get somebody to check into a nice hotel in Shanghai and then be able to use her name. Your Honor, the government would note that the document was not authenticated, that it was the burden of the defendant – excuse me, of the petitioner to establish that it is a legitimate document or that it is – it compels the conclusion that she was credible on the question of whether – of her date of entry. This Court's decision in Celah states that this is a question of fact and this Court is without jurisdiction. Okay. What if we thought – what if we were convinced that the IJA is just flat wrong on this one? Are we still without jurisdiction? If this Court determines that that would be a constitutional violation, this Court would not be – Okay. Would it be a constitutional violation if we determined that the IJA was flat wrong? Our position is that this Court is without jurisdiction to determine whether the IJA was flat. So your contention is it would not be a constitutional violation if we thought the IJA was flat wrong. In other words, doesn't the IJA have to provide some basis, some rational basis for its conclusion? We believe that he does establish – excuse me, that he does provide a rational basis, that he explains that the boarding card, which is the only evidence of her actual transit to the United States, is in another person's name. The hotel receipt is – it does not determine that she traveled to the United States. It just shows that she may have stayed the night in Shanghai. It just absolutely, utterly defies logic that she could be in China in January and in the United States in October and that she hasn't come to the United States sometime between January and October, right? It is not clear and convincing evidence that she has. As I said, it may be that someone else used her name. And it was within the IJA's discretion to determine that issue. And this Court is without jurisdiction to review it. What deprives us of jurisdiction? Excuse me? What deprives us of jurisdiction? 8 U.S.C. Section 1158A.3. This Court is without jurisdiction to review discretionary determinations of the immigration judge. It takes timeliness away from us. Is that correct? Correct. Is that part – that's part of ARERA? Yes, Your Honor. And this Court in Salah determined that this indeed is a question of fact and is not reviewable by this Court. Well, does that go to the jurisdictional issue or does that have to do with discretionary decisions based upon substantial evidence in terms of the overall case? Excuse me? In other words, you're saying that jurisdiction is denied to this Court based upon the findings of the IJA with respect to these two issues that Judge Bybee just mentioned. On the other hand, the law that you cited primarily focuses on discretionary decisions made based upon facts overall in terms of whether the petitioner proves his or her case. Isn't that correct? Our position is only that this Court is without jurisdiction to review the one-year bar issue and whether the petitioner established by clear and convincing evidence that she entered the United States. Let's assume that – let's assume hypothetically that we don't think there's clear and convincing evidence. Are we without jurisdiction? I would submit that this Court is without jurisdiction. Okay. What level of absurdity would we have to reach to give us jurisdiction? Well, let's just say that the IJA just said, I don't like this person. She wears green eye shade. Is that enough to deprive us of jurisdiction? Is that a discretionary decision? That is not a discretionary decision regarding the one-year bar. It does not go to the question of whether she filed her application for asylum within one year of arrival in the United States. Let's say that she had a receipt to buy green eye shade at a particular time period. My point is simply that, as Judge Bybee pointed out, there's a logical absurdity in the position that the IJA took here. And you're saying that this jurisdictional issue is decided by clear and convincing evidence. That's a high evidentiary standard. So my question to you is, if we conclude that that standard has not been reached, albeit in a discretionary situation here, are we still without jurisdiction according to government? Concerning this discretionary determination, yes, our position would be that this Court is without jurisdiction to consider the one-year bar issue. Also, Petitioner raises her constitutional claims are without merit. She states that the Board summarily affirmed the IJA's determination to not explain its reasoning. This is not a summary affirmance. The Board of. . . Let's go away from that. That's not a particularly fruitful area. But let's talk for a moment. Let's assume, arguendo, that we have jurisdiction. Some of the inquiries made by the IJA and upon which the IJA based the decision are really peculiar. For example, he said that she's not a Christian because she couldn't say what happened between the New and the Old Testament. Can you tell me what happened between the New and the Old Testament? That's my question exactly. What's the official government position on what happened between the Old and the New Testament? Your Honor, whether I can identify what happened between the New and the Old Testament is not relevant to the case. How is it relevant to this case? Our position is that here the immigration judge did not reject her claim that she's a Christian solely because she could not identify the basic contours of the Christian faith, but. . . There's no basic contours to be had there. The Book of Malachi occurs in 432 B.C. We have 400 years of history between the Old Testament and New Testament that's not recorded there. What was she supposed to say in answer to that question? As I was saying, the immigration judge did not reject her claim that she's a Christian solely because she could not identify. . . But it was one of the bases that was cited by the IJA and was one of the bases that you put in your brief. Correct, Your Honor. However, the immigration judge considered her lack of knowledge against the backdrop of other inconsistencies in the record, including her failure to be able to identify who her pastor was, although she stated that she's been attending church in the United States for nearly a year. Additionally, she could not. . . Correct, Your Honor. But this goes to the heart of her claim as to whether or not she was in fact a Christian and for that reason had to flee China because of persecution. Another. . . The question of whether she would know the name of her pastor at the Salvation Army in Los Angeles, or Rosemary, wherever she is, is not evidence as to whether she got persecuted in China. It goes to the question of whether she is in fact a Christian, and she would face persecution, a likely probability of persecution if she were to return to China. As I was saying, although another finder of fact may have concluded differently on these facts, the evidence in the record does not compel the conclusion that she is in fact a Christian. But he has to provide specific cogent reasons for his reasoning here, right? Correct. And that's the problem. If you go through one after another, his argument about the two procedures regarding the abortion, she gave an explanation. There was no. . . he simply discredited it completely, and yet there were medical bases for the decision. She explained that. You have the issue of the documents that. . . Not all the documents were taken from her, just some of them. You have the issue of the stamps in the hospital. Basically, at least arguably, the IJ did not provide specific cogent reasons for his decision. Our position is that the decision is supported by substantial evidence that he did provide cogent reasons and that the burden was on the petitioner to prove, to explain the inconsistencies in the record. As you stated, two documents, one stated a miscarriage on the 21st of November and the other one stated an abortion on the 28th. But she did explain them. He just didn't credit them. That the record could support two inconsistent conclusions does not mandate the determination that the IJ's conclusions were not supported. But there was no evidence to the contrary. Excuse me? There was no evidence presented to the contrary by the government, was there, in these instances? There was no evidence presented by the government concerning what the procedure that she actually underwent was, but the burden was on the petitioner to establish what happened to her. And as I said, that two fact-finders could come to different conclusions does not compel the determination that she was, in fact, credible. Counsel, the IJ's credibility determination was based on the substantive content of her answers and not on her demeanor. Is that correct? The IJ does cite to her demeanor. Where is that? Because I missed that. Courts indulgence, please. Sure. On page 53 of the administrative record, the IJ states that a year of her entry shall also be a materially silent claim. Respondent was also hesitant, particularly on cross-examination, responding to some questions, and because of the inconsistencies with her documents relating to her stay in the hospital, so forth, I do make an adverse credibility determination. The IJ does refer to her demeanor. Does the government have a position on, there was some back and forth about whether her husband had been in the United States. I didn't see anything developed in the, I mean, there were sort of hints that that might have gone to her credibility because she said that her husband hadn't come to the United States, and yet it would have been at a time when she likely would have known that he was here. Does the government have anything further on that? No, we do not, Your Honor. I say that my time is up. In conclusion, we, excuse me, in conclusion, the petition for review should be denied in part and dismissed in part. Thank you. Okay. Thank you, counsel. Your Honor, on one point, this case was filed with the court in 2002, so this case is per REAL-ID Act. Actually, the standard to prove her burden on the petitioner was not clear and convincing. Before REAL-ID Act, it should have been more likely than not. Only after May 11, 2005, then the petitioner has the burden of proof by clear and convincing evidence. The second is the Ninth Circuit Court has jurisdiction over the constitutional issues, and I will cite Sanchez-Cruz V.I.N.S. 255 F.3.D. 775 Ninth Circuit, 2001, holding that the court would return jurisdiction over allegations of I.J.'s bias. Since my apparent brief administrative record ---- What's the constitutional issue there, counsel? Deprivation of a meaningful opportunity to be heard. And so what's that, a Sixth Amendment claim? Is that what you're saying? What provision of the Constitution are you citing here? Constitutional rights. Because each area in the United States has her constitutional rights. Okay, I understand your point. I'm simply saying what constitutional right was violated here, if your position is correct? What aspect of the Constitution was violated? Sixth Amendment. Sixth Amendment. What part of the Sixth Amendment? Due process right. Which means Fifth Amendment. Oh, Fifth Amendment. Or Fourteenth. So in any event ---- Fifth Amendment. Sorry. Fifth Amendment due process right. And the other point is, Your Honor ---- But how was she not heard? She was given an opportunity to be heard. Your problem is that she wasn't heard correctly. Correct.  And the judge speculated, used her own knowledge to judge who should the Christian is, you know, what Christian should be, should look like, should have knowledge about all those Christianity, about Bible, about Christianity histories. So I do not believe my client had a fair opportunity to be heard. And also the government decided that the judge said client demeanor part, she, like, answered the question hesitantly. This is kind of like a general summarization does not shed light on her credibility at all, because it's sometimes you forgot things, you feel the question is hard, you should think one second, two seconds, doesn't mean your answer is false. So to summarize, I believe my client has met her burden of proof that she came to the United States on January 26, 2005. Her application on October 2, 2005 was in a year. And also she suffered a past persecution. She is credible. She should be granted asylum. Also, even if she, you know, the court concluded that the court has no jurisdiction about the one-year war, at least she should be eligible for withholding of removal, which doesn't require clients to prove that she filed her application within a year of arrival. Thank you, counsel. Thank you, Your Honor. Thank both counsel for the argument. Zeng v. Mukasey will be submitted. The next case on the oral argument calendar is United States v. Garcia-Renteria. Thank you.
judges: Canby, Bybee, M Smith